O'CONNOR PLAYDON & GUBEN LLP
A LIMITED LAW PARTNERSHIP

JERROLD K. GUBEN    3107-0
JEFFERY S. FLORES    8691-0
733 Bishop Street, 24th Floor
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
jkg@opglaw.com
jsf@opglaw.com

Attorneys for Debtor,
WESTERN APARTMENT SUPPLY &
MAINTENANCE CO.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>WESTERN APARTMENT SUPPLY<br>& MAINTENANCE CO.,<br>a California corporation,<br><br>               Debtor. | Case No. _____<br>(Chapter 11)<br><br>DEBTOR'S MOTION FOR ORDER<br>AUTHORIZING THE INTERIM USE<br>OF CASH COLLATERAL<br>PURSUANT TO 11 U.S.C. § 363(c)(2)<br>AND RULE 4001(b), F.R.Bk.P.;<br>EXHIBITS "A"-"C"<br><br><u>Hearing:</u><br>Date:<br>Time:<br>Judge:    Honorable Robert J. Faris |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE
INTERIM USE OF CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363(c)(2) AND RULE 4001(b), F.R.Bk.P.**

Western Apartment Supply & Maintenance Co., the Debtor and Debtor-in-Possession (the "Debtor"), hereby moves this Court for the entry of an order authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Rule 4001(b), F.R.Bk.P.

The Debtor seeks to use the cash collateral of its single consensual secured creditor OWB. <u>See</u> Exhibit A, Title Guaranty of Hawaii, Inc. Financing Statement and Lien Report, March 7, 2011.

The total scheduled amount due the Secured Creditors, as of the Petition Date is in the principal amount of approximately $11,703,209 secured by a First and Second Mortgages, Promissory Note and Financing Statement.

The Debtor seeks authority to use the Secured Creditors' Cash Collateral to pay operating expenses for the period April 5, 2011 until the Court schedules a final hearing pursuant to Rule 4001(b)(2), F.R.Bk.P., as provided for by the Debtor's Chapter 11 30-60-90 budget. <u>See</u> Exhibit B.

The Debtor proposes to provide adequate protection for the use of Cash Collateral by providing the Secured Creditor with replacement liens having the same priority and extent as the respective Secured Creditor's existing security interests in its pre-petition collateral, in each respective Secured Creditor's collateral and priority and to the same extent and as the Secured Creditor's pre-petition liens, and subject to the same rights and challenges by or on behalf of the

Debtor and payment of $60,000.00 per month, with the first payment due before the final hearing but not later than 30 days from the date of the filing.

Nothing in this Motion shall be deemed a request for authority to assume, and nothing in this Motion shall be deemed an authorization to assume any executory contracts or unexpired lease under Section 365 of the Bankruptcy Code, 11 U.S.C. § 365. Attached hereto as Exhibit C is the proposed form of a Cash Collateral Stipulation, or in the alternative, a proposed form of order for the interim use of cash collateral.

This Motion is brought pursuant to 11 U.S.C. § 363 and Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure, and is based upon the attached Memorandum in Support, the exhibits attached hereto, and by the record in this case, and by such other evidence and argument as counsel may present before or at the hearing on the Motion and the files and pleadings in this case.

DATED: Honolulu, Hawaii, April 5, 2011.

JERROLD K. GUBEN
JEFFERY S. FLORES
Attorneys for the Debtor
WESTERN APARTMENT SUPPLY &
MAITENANCE CO.

O'CONNOR PLAYDON & GUBEN LLP
JERROLD K. GUBEN     3107-0
JEFFERY S. FLORES     8691-0
733 Bishop Street, 24th Floor
Honolulu, Hawaii  96813
Telephone:  (808) 524-8350
Facsimile:  (808) 531-8628
jkg@opglaw.com
jsf@opglaw.com

Attorneys for Debtor,
WESTERN APARTMENT SUPPLY &
MAINTENANCE CO.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>WESTERN APARTMENT SUPPLY<br>& MAINTENANCE CO.,<br>a California corporation,<br><br>           Debtor. | Case No. _____<br>(Chapter 11)<br><br>MEMORANDUM IN SUPPORT OF<br>DEBTOR'S MOTION FOR ORDER<br>AUTHORIZING THE INTERIM TO<br>USE CASH COLLATERAL<br>PURSUANT TO 11 U.S.C. § 363(c)(2)<br><br><u>Hearing:</u><br>Date:<br>Time:<br>Judge:    Honorable Robert J. Faris |

**MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION FOR ORDER
AUTHORIZING THE INTERIM TO USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363(c)(2) ); EXHIBITS A and C**

In support of its Motion for Order Authorizing the Interim Use Cash

Collateral Pursuant to 11 U.S.C. § 363(c)(2) and Rule 4001(b), F.R.Bk.P., Western

Apartment Supply & Maintenance Co., the Debtor and Debtor-in-Possession, respectfully represents as follows:

## I.    BACKGROUND

1.    The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on April 5, 2011.

2.    The Debtor continues to operate its businesses pursuant to 11 U.S.C. §§ 1107 and 1108, as the Maui Oceanfront Inn, Kihei, Maui.

3.    No creditor's committee has yet been appointed in this case.

4.    As noted above, the Debtor has one major *consensual* general secured creditor, OneWest Bank ('OWB'), that holds a blanket security interest over the Debtor's assets or any creditors secured by the Debtor.

## II.    SECURED CREDITOR

5.    As of the Petition Date, the Debtor had one general consensual Secured Creditor, OneWest Bank ('OWB'), whose collateral might include cash collateral, as that term is defined in the Bankruptcy Code.  See Exhibit A, Title Guaranty of Hawaii, Inc. Financing Statement and Lien Report, March 7, 2011.

## III.    USE OF CASH COLLATERAL

6.    The Debtor requests authority to use the Cash Collateral  in the amounts set forth in the 30-60-90 day budget, attached hereto as Exhibit B, and

pursuant to the terms and conditions set forth in Exhibit C, the proposed form of Stipulation or Order for the Interim Use of Cash Collateral in order to pay the reasonable and ordinary expenses of operating the Debtor's business, the Maui Oceanfront Inn, Kihei, Maui, including, without limitation, employees and benefit expenses, real property taxes, federal and state taxes, supplies and equipment, advertising, utility services, insurance, vendor and supplier services, and other expenditures as are necessary for operating his businesses and preserving their going concern value, including the "lease rents" to various Lessors, including professional fees and costs as approval by the Court, after notice and hearing.

7.     As adequate protection for the use of cash collateral, the Debtor proposed to pay OWB the sum of $60,000.00 per month, including an assignment of the monthly rent from the Debtor's lessee Sarento's on the Beach, and to the extent of any difference between the monthly rent paid by Sarento's to OWB, the Debtor will provide any sums to equal the $60,000.00 per month.

8.     The Debtor also requests authority to use the Cash Collateral to pay the reasonable and ordinary expenses to administer this estate in bankruptcy, including, without limitation, quarterly fees payable to the United States Trustee, and payment of the fees and reimbursement of costs to the Debtor's professionals including, without limitation, its attorneys, accountants, and the fees and reimbursement of costs to the professionals retained with the Court's approval by

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed  04/05/11  Page 6 of 93

any statutory committees appointed in the Chapter 11 case, in amounts approved and authorized to be paid by the Court.

9.     The Debtor believes the Secured Creditors are adequately protected because the use of Cash Collateral enables the Debtor to operate its business, will replace the cash component of Cash Collateral, and the Debtor is willing to provide the Secured Creditor with full and complete replacement liens in the post-petition cash recovered by the Debtor.

10.     Without prejudice to the Debtor's and other parties' positions regarding the validity, perfection, priority, and/or extent of any of the Secured Creditors' claims or security interests in the Cash Collateral, and to provide adequate protection for such security interests (if and to the extent such security interests are valid and perfected), the Debtor intends to grant the Secured Creditors replacement liens (the "Replacement Liens"), with the same priority and extent as the respective Secured Creditors' existing security interests in the Pre-Petition Collateral.

11.     The Replacement Liens would thus be granted with the same validity and priority and to the same extent and as the Secured Creditors' prepetition liens, and would be subject to the same rights and challenges by or on behalf of the Debtor. The amount secured by the Replacement Liens shall be equal to any actual net diminution of the Secured Creditors' Cash Collateral due to the Debtor's use thereof.

12.     The Replacement Liens shall be valid, perfected and enforceable against the Replacement Collateral as of the Petition Date, without further filing or recording of any document or instrument or the taking of any further action, and shall not be subject to dispute, avoidance or subordination as to the Adequate Protection Claim.

13.     The Replacement Liens shall be subject and subordinate in priority to any liens, security interests and other encumbrances, existing as of the Petition Date, or which attach to the Replacement Collateral after the Petition Date, that are valid, perfected, enforceable and unavoidable, that are granted with the consent of the Secured Creditors or that are otherwise senior to the pre-petition liens in favor of the Secured Creditors.

14.     In addition to the Replacement Lien for the Debtor's use of cash collateral to be used in the operations of the Debtor, the Debtor will pay to OWB $60,000.00 as additional adequate protection for the interim use of cash collateral.

## IV.    THE COURT SHOULD AUTHORIZE THE DEBTOR'S USE OF CASH COLLATERAL BECAUSE THE SECURED CREDITORS ARE ADEQUATELY PROTECTED AND WILL CONTINUE TO BE ADEQUATELY PROTECTED

15.     A debtor's use of estate property is governed by Bankruptcy Code Section 363.

16.     A debtor-in-possession may continue to operate its business unless the court orders otherwise, under 11 U.S.C. §§1107 and 1108, and so long

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 8 of 93

as the debtor continues to operate in its ordinary course of business, under Section 363(c)(l) of the Bankruptcy Code, without notice or a hearing the debtor may enter into transactions and use property of the estate, provided said property does not constitute cash collateral.

17. 'Cash collateral' is defined in Bankruptcy Code Section 363(a) as meaning "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."

18. Bankruptcy Code Section 363(c)(2) permits a debtor to use cash collateral if either of two alternate circumstances exist:

> (A)   each entity that has an interest in such collateral consents; or

> (B)   the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section.

11 U.S.C. § 363( c)(2). Therefore, the Court may authorize use of a creditor's cash collateral in the absence of creditor consent.

19. Authority to use Cash Collateral is consistent with the very purposes for which Chapter 11 exists:

> A debtor, attempting to reorganize a business under
> Chapter 11, clearly has a compelling need to use "cash
> collateral" in its effort to rebuild. Without the availability
> of cash to meet daily operating expenses such as rent,
> payroll, utilities, etc., the congressional policy favoring
> rehabilitation over economic failure would be frustrated.

Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.,

727 F.2d 1017, 1019 (11th Cir. 1984).

20.    Courts will allow the use of cash collateral when the use tends

to enhance or preserve the debtor's reorganization value. See, e.g. Stein v. United

States Farmers Home Administration (In re Stein), 19 B.R. 458, 460 (Bankr. Pa.

1982) (debtor was granted authority to use cash collateral where the secured party

was undersecured because the use of cash collateral was necessary to the debtor's

continued operations and the creditor's "secured position can only be enhanced by

the continued operation of the [debtor's business]"); In re Dynaco Corp., 162 B.R.

389, 396 (Bankr. D.N.H. 1993) (finding that the alternative to the debtor's use of

cash collateral - termination of the debtor's business - would doom the

reorganization and any chance to maximize value for all of the creditors).

21.    Pursuant to Section 363(e), "on request of an entity that has an

interest in property used, sold or leased, or proposed to be used, sold, or leased, by

the trustee, the court, with or without a hearing, shall prohibit or condition such

use, sale, or lease as is necessary to provide adequate protection of such interest."

11 U.S.C. § 363(e) (emphasis added).  Thus, the Court may authorize the Debtors

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 10 of 93

to use the Secured Creditor's cash collateral if their interest in such collateral is adequately protected.

22.    Bankruptcy Code Section 361 addresses the issue of adequate protection, and although adequate protection is not defined therein, several non-exclusive methods of adequate protection are enumerated:

> When adequate protection is required under sections 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by-
>
> > (1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> >
> > (2)    providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> >
> > (3)    granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(l) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11U.S.C. §361.

23.    It is only when the value of a secured creditor's interest in collateral is likely to decline post-petition that added protection is needed:

> The analysis of the Supreme Court in <u>Timbers</u> is instructive here. <u>The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect</u>. If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.

<u>In re McCombs Properties VI, Ltd.</u>, 88 B.R. 261, 266 (Bankr.C.D.Cal. 1988) (emphasis added). <u>Accord</u>, <u>In re Delta Resources, Inc.</u>, 54 F3d 722, 730 (11th Cir.), <u>cert denied</u>, 64 U.S.L.W. 3348 (1995); <u>In re Westchase I L.P.</u>, 126 B.R. 692, 694-95 (W.D.N.C. 1991). <u>See</u> <u>In re Weinstein</u>, 227 B.R. 284 (9th Cir.B.A.P.1998) (adequate protection other than replacement lien only required for deterioration or decline in value of the collateral).

24.     Adequate protection is aimed not at protecting precise collateral, but protecting the value of the secured creditor's interest in collateral. <u>In re Williams</u>, 7 B.R. 234, 237 (Bankr. M.D.Ga. 1980) (Though a creditor may not be able to retain his lien upon the specific collateral held at the time of filing, the purpose of section 361 is to insure that the secured creditor receives the value for which he bargained).

25.     While the Debtor believes that a replacement, full and complete lien is adequate to protect the OWB's security interest and the use of the OWB's cash collateral, the Debtor will pay OWB an additional payment of $60,000,00 for the use OWB's cash collateral. Since the OWB collateral of real property is not

deteriorating, OWB might not be entitled to any adequate protection payment, but the Debtor will give OWB $60,000.00 as additional adequate protection.

## V. THE SECURED CREDITORS ARE ADEQUATELY PROTECTED BY THE GOING CONCERN VALUE OF THE DEBTOR'S BUSINESS AND THE REPLACEMENT LIENS

26. Courts should take a pragmatic approach when assessing whether a secured creditor is adequately protected, and that may require consideration of whatever factors are relevant to a particular debtor. See, e.g., In re Rogers, 239 B.R. 883, 887 (Bankr. E.D.Tex. 1999):

> The determination of whether a creditor interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic, requiring a court to balance all relevant factors in a particular case, including the value of the collateral;, whether the collateral is likely to depreciate over time, the debtor's prospects for a successful reorganization and the debtors performance under the plan. In re Olick, 221 B.R. 146, 161 (Bankr.E.D.Pa.1998). Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. Id.

27. The Bankruptcy Code expressly provides that the granting of additional liens constitutes a means of providing adequate protection. 11 U.S.C. § 361(2) ("adequate protection may be provided by ... an additional or replacement lien to the extent that such... use ... results in a decrease in the value of such entity's interest in such property").

28.    Courts have recognized that the granting of replacement liens, coupled with the continued operations of the debtor, provides adequate protection of a creditor's interest in cash collateral used by the debtor.  See, e.g., Mbank Dallas v. O'Connor (In re O'Connor), 808 F.2d 1393, 1196-96 (10th Cir. 1987) (debtor authorized to use cash collateral to drill gas wells where creditors offered replacement liens of equal or greater value on well proceeds and other regular income).

29.    The Secured Creditors will be granted replacement liens on the future revenues of the Debtor by Secured Creditors and proceeds generated with alleged Cash Collateral with a value equal to the amount of the Cash Collateral expended by the Debtor. The Debtor proposes to pay the OWB in addition to the Replacement Lien and 11 U.S.C. § 507(b) priority, a payment of $60,000.00, as additional adequate protection.

30.    Accordingly, where a debtor's use of cash collateral protects the secured creditors from such loss, the secured creditors are adequately protected without any other form of adequate protection, other than a full and complete replacement lien.  In this case, the Debtor is willing to provide additional adequate protection in the form of a cash payment of $60,000.00 to OWB.  See, e.g., Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 730 (11 Cir. 1995); In re Westchase I Associates, L.P., 126 B.R. 692, 694 (Bankr. W.D.N.C. 1991) ('Thus, if the value of the property itself is not declining,

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 14 of 93

as is the case here, the creditor would not be entitled to protection of the accruing interest value of the claim.").

## VI.   IMMEDIATE RELIEF IS APPROPRIATE IN THIS CASE BECAUSE THE CONTINUATION OF THE DEBTOR'S BUSINESS DEPENDS UPON AUTHORIZATION TO USE CASH COLLATERAL

31.     In enacting section 363 of the Bankruptcy Code, Congress specifically recognized that it might be necessary to schedule expedited hearings on requests for authorization to use cash collateral because of the business exigencies of individual cases.   Section 363(c)(2)(B) authorizes the use, sale, or lease of cash collateral "after notice and a hearing." Section 363( c)(3) provides, in pertinent part:

> Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with the hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor . .. The court shall act promptly on any request for authorization under Paragraph (2)(B) of this subsection,

11 U.S.C. § 363(c)(3).

32.     Similarly, the Ninth Circuit Court of Appeals has recognized that ex parte interim relief may be crucial to the success of a reorganization:

> We realize that "in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code "is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations." [citation omitted] ...  It is for this very reason

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 15 of 93

that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor."

Owens-Corning Fiberglass Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985).

33.    Rule 400l(b)(2) of the Federal Rules of Bankruptcy Procedure provides that, at a preliminary hearing, the "court may authorize the use of only the amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Rule 4001(b)(2), F.R.Bk.P.

34.    The Debtor requests, to avoid immediate and irreparable harm to the estate, the Court, schedule an Emergency Hearing for _____ and authorize the Debtor to use the Secured Creditors' Cash Collateral through the date of the final hearing.

35.    The Debtor must have the immediate use of the alleged Cash Collateral to meet payroll, and reasonable expenses, to meet the daily costs and expenses of operating, to promptly pay its vendors to keep the Debtor operating. Any delay in the Debtor's ability to meet any of these needs could deprive the Debtor of its business and the ability to successfully reorganize its financial affairs, to the prejudice of all creditors and parties in interest.

36.    In this case, the entry of an order authorizing the use of the Secured Creditors' cash collateral is particularly relevant because,

(a)    OWB, and the Debtor have entered into a Cash Collateral Stipulation in the form of this Court's Order, to continue business while the Debtor as the proceeds to confirm his Chapter 11 Plan;

(b)    Even though the major collateral real property is not subject to deterioration or depreciation, the Debtor is willing to give OWB and a full and complete Replacement Lien *and* pay an adequate protection payment of $60,000.00 for the use of OWB's cash collateral for the next 30 days.

## VII.  THE COURT SHOULD SCHEDULE A FINAL HEARING ON THE MOTION AS SOON AS PRACTICABLE

37.    Rule 4001 (b) of the Federal Rules of Bankruptcy Procedure provides that *"the court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion."* Fed. R. Bank. Proc. Rule 4001(b)(l) (emphasis added).

38.    The Debtor requests the Court set a final hearing on the Motion for Order Authorizing the Use of Cash Collateral, on or about April ___, 2011.

39.    The Debtor further requests that, at the April ___, 2011 hearing on the Motion, the Court authorize the Debtors to continue to use revenues from the Cash Collateral for the Debtor's projected expenses, in accordance with the proposed Chapter 11 Plan budget, attached hereto as Exhibit B, to provide an analysis of the budget upon confirmation of the Plan.

## VIII. RESERVATION

40.    At this time, the Debtor has not completed an analysis of the perfection or priority of the Secured Creditors' interests, or whether any of the claims or security interests of the Secured Creditor is subject to avoidance or subordination.  Nothing in this Motion is intended or should be construed as an admission by the Debtor as to the nature, extent, or priority of the claims or secured interests, if any, claimed by the Secured Creditor.  Rather, to the extent the Secured Creditor have an interest in the Debtor's Cash Collateral, the Debtor proposes to provide the Secured Creditor with the adequate protection proposed herein.

## IX.    CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court:

(1)    enter an order authorizing the Debtor's immediate use of the cash collateral use of cash collateral for the period from April 5, 2011 to the scheduled final hearing April ___, 2011, in accordance with this motion, upon the Debtor, providing OWB in full and complete replacement liens for all post-petition revenues and provide OWB an adequate protection payment of $60,000.00 to be paid upon the entry of the order authorizing the use of cash collateral for 30 days. These are the same terms and conditions as provided for and approved by OWB

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 18 of 93

and this Court in Cash Collateral Stipulation. The Cash Collateral Stipulation expires on April ___, 2011 and the Debtor needs emergency and immediate relief.

       (2)     schedule an April ___, 2011 hearing on this Motion and a final hearing on the Motion for Order Authorizing the Use of Cash Collateral, no earlier than _____;

       (3)     for such other and further relief as the Court may deem just and proper.

       DATED: Honolulu, Hawaii, April 5, 2011.

                                        JERROLD K. GUBEN
                                        JEFFERY S. FLORES
                                        Attorneys for the Debtor
                                        WESTERN APARTMENT SUPPLY & MAINTENANCE CO.

# Exhibit A

# Exhibit A

# Title Guaranty of Hawaii, Inc.

**235 QUEEN STREET, HONOLULU, HI 96813 • P.O. BOX 3084, HONOLULU, HI 96802**

CSU3A  **Phone (808) 533-6261  Fax (808) 521-0278**

O'Connor Playdon & Guben LLP
Makai Tower
733 Bishop St, Ste 2400
Honolulu, HI 96813

Attention:  Julie Ratum

Re:  WESTERN APARTMENT SUPPLY
& MAINTENACE CO

## FINANCING STATEMENT AND LIEN REPORT

Maximum liability limited to
$3,500.00

We have made a search of the Indexes at the Bureau of Conveyances of the State of Hawaii and certify that the following is a list of: (1) all liens recorded in said Indexes; and (2) all U.C.C. financing statements and assignments thereof which have been recorded or for which a valid continuation statement has been recorded in said Indexes within the period beginning five (5) years and six (6) months prior to the date of this report and ending on the date of this report; against:

**WESTERN APARTMENT SUPPLY & MAINTENACE CO**

**LIENS:**

1. **STATE TAX LIEN recorded as Document No. <u>2010-024805</u>**
2. **STATE TAX LIEN recorded as Document No. <u>2010-080078</u>**
3. **STATE TAX LIEN recorded as Document No. <u>2010-118983</u>**
4. **STATE TAX LIEN recorded as Document No. <u>2010-157287</u>**
5. **STATE TAX LIEN recorded as Document No. <u>2010-181451</u>**
6. **STATE TAX LIEN recorded as Document No. <u>2011-038122</u>**

Exhibit A

**FINANCING STATEMENTS:**

1.  **FINANCING STATEMENT recorded as Document No. <u>2007-031155</u>**
    **AMENDMENT recorded as Document No. <u>2010-123201</u>**
2.  **FINANCING STATEMENT recorded as Document No. <u>2007-031158</u>**
    **AMENDMENT recorded as Document No. <u>2010-123196</u>**

(See photocopies attached, if any reported above)

-Note:-    No search has been made for, and this report does not cover: (1) any
financing statements incorporated in a mortgage; and (2) any financing
statements or other instruments affecting the same which may have been
recorded or registered in the filing office of another state or country.

This report is dated March 7, 2011 at 8:00 a.m.

Inquiries concerning this report should be directed to
Christine Oishi
Email: coishi@tghawaii.com
Fax: 521-0278
Telephone (808)-533-5855
Refer to Order No. 201109654





R-694     **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**

FEB 23, 2010     01:00 PM

Doc No(s) 2010-024805



/s/ NICKI ANN THOMPSON
REGISTRAR

20     26/27   Z12

---

After Recordation Return By:   Mail ☐   Pickup ☒   To:

DEPARTMENT OF TAXATION                      STATE OF HAWAII
Compliance Division - Collection Branch      Department of Taxation
P.O. Box 259                                 Compliance Division
Honolulu, HI 96809

---

Form D-15 (Rev. 2009)            STATE OF HAWAII – DEPARTMENT OF TAXATION
## CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):        WESTERN APT SUPPLY & MAINT CO
                               MAUI OCEANFRONT INN
Residence or business address:  1335 Hotel Cir S # 107
                               San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 11/09 | | 3,541.76 |
| | Transient Accommodations | TA-01 | 11/09 | | 5,214.72 |
| | | | | **Total:** | **$8,756.48** |

Dated: WAILUKU, Hawaii                    Director of Taxation of the State of Hawaii
February 10, 2010

COUNTY OF MAUI          } SS        By: _____
STATE OF HAWAII         }                S. Hondo, Delinquent Tax Collection Assistant

On this 10th day of February, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated February 10, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013



R-550    **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
JUN 09, 2010    09:00 AM

Doc No(s) 2010-080078





/s/ NICKI ANN THOMPSON
REGISTRAR

20    21/21  Z12

---

After Recordation Return By:  Mail ☐  Pickup ☒  To:

| | |
|---|---|
| DEPARTMENT OF TAXATION<br>Compliance Division - Collection Branch<br>P.O. Box 259<br>Honolulu, HI 96809 | STATE OF HAWAII<br>Department of Taxation<br>Compliance Division |

---

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
                         MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
                              San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 02/10 | | 10,193.99 |
| | Transient Accommodations | TA-01 | 02/10 | | 17,992.07 |
| | | | | **Total:** | **$28,186.06** |

Dated:  WAILUKU, Hawaii
         June 2, 2010

COUNTY OF MAUI            } SS
STATE OF HAWAII          }

Director of Taxation of the State of Hawaii

By: _____

    S. Hondo, Delinquent Tax Collection Assistant

On this 2nd day of June, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated June 2, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

*(Notary seal: DENISE CORDEIRO, NOTARY PUBLIC, No. 89-568, STATE OF HAWAII)*





R-514  STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
AUG 17, 2010  08:02 AM

Doc No(s) 2010-118983



/s/ NICKI ANN THOMPSON
REGISTRAR

20  20/22  Z14

After Recordation Return By:  Mail ☐  Pickup ☒  To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION
## CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):       WESTERN APT SUPPLY & MAINT CO
                              MAUI OCEANFRONT INN
Residence or business address: 1335 Hotel Cir S # 107
                              San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 03/10 | | 7,184.78 |
| | General Excise | GE-01 | 04/10 | | 6,200.96 |
| | Transient Accommodations | TA-01 | 03/10 | | 14,004.90 |
| | Transient Accommodations | TA-01 | 04/10 | | 10,244.84 |
| | | | | **Total:** | **$37,635.48** |

Dated: WAILUKU, Hawaii
       July 30, 2010

COUNTY OF MAUI        } SS
STATE OF HAWAII       }

Director of Taxation of the State of Hawaii

By: _____
    S. Hondo, Delinquent Tax Collection Assistant

On this 30th day of July, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated July 30, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

DENISE CORDEIRO
NOTARY
PUBLIC
No. 89-568
STATE OF HAWAII



R-679     **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
OCT 18, 2010    08:02 AM

Doc No(s) 2010-157287





/s/ NICKI ANN THOMPSON
REGISTRAR

20    18/18  Z1

---

After Recordation Return By:  Mail ☐  Pickup ☒  To:

| | |
|---|---|
| DEPARTMENT OF TAXATION<br>Compliance Division - Collection Branch<br>P.O. Box 259<br>Honolulu, HI 96809 | STATE OF HAWAII<br>Department of Taxation<br>Compliance Division |

---

Form D-15 (Rev. 2009)      STATE OF HAWAII– DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 05/10 | | 6,610.77 |
| | General Excise | GE-01 | 07/10 | | 5,403.17 |
| | Transient Accommodations | TA-01 | 05/10 | | 11,955.75 |
| | Transient Accommodations | TA-01 | 07/10 | | 13,255.27 |
| | | | | **Total:** | **$37,224.96** |

Dated: WAILUKU, Hawaii
    September 28, 2010

Director of Taxation of the State of Hawaii

COUNTY OF MAUI          } SS

STATE OF HAWAII        }

By: _____
    S. Hondo, Delinquent Tax Collection Assistant

On this 28th day of September, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1 page Certificate of State Tax Lien, dated September 28, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013





R-608      **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
NOV 23, 2010    08:02 AM

Doc No(s) 2010-181451



/s/ NICKI ANN THOMPSON
REGISTRAR

20    23/23  Z12

---

After Recordation Return By: Mail ☐ Pickup ☒ To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

---

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION
# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
                      MAUI OCEANFRONT INN
Residence or business address:  1335 Hotel Cir S # 107
                      San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 08/10 | | 6,363.74 |
| | Transient Accommodations | TA-01 | 08/10 | | 12,257.32 |
| | | | | **Total:** | **$18,621.06** |

Dated: WAILUKU, Hawaii
       November 9, 2010

COUNTY OF MAUI         } SS
STATE OF HAWAII       }

Director of Taxation of the State of Hawaii

By: _____
S. Hondo, Delinquent Tax Collection Assistant

On this 9th day of November, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated November 9, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013





R-710    STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
MAR 04, 2011    12:00 PM

Doc No(s) 2011-038122



/s/ NICKI ANN THOMPSON
REGISTRAR

20    26/27   Z2

---

After Recordation Return By: Mail ☐ Pickup ☒ To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

---

Form D-15 (Rev. 2009)        STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):      WESTERN APT SUPPLY & MAINT CO
                        MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
                               San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 09/10 | | 8,124.17 |
| | General Excise | GE-01 | 10/10 | | 9,216.60 |
| | General Excise | GE-01 | 11/10 | | 7,628.17 |
| | Transient Accommodations | TA-01 | 09/10 | | 18,807.05 |
| | | | | **Total:** | **$43,775.99** |

Dated: WAILUKU, Hawaii
    February 23, 2011

COUNTY OF MAUI         } SS
STATE OF HAWAII       }

Director of Taxation of the State of Hawaii

By: _____
    S. Hondo, Delinquent Tax Collection Assistant

On this 23rd day of February, 2011 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated February 23, 2011, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
J. Lesinski  (727) 777-4000 ext 275

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
1013022674A OWBFA HI Bureau Of Conveyances

R-926
STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
AUG 24, 2010    01:00 PM

Doc No(s) 2010-123201

/s/ NICKI ANN THOMPSON
REGISTRAR

20    1/1    Z12

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| Bk: Pg: Instr#: 2007-031155 Date: 02/20/2007 | ☐ |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.

☐ DELETE name: Give record name to be deleted in item 6a or 6b.

☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OneWest Bank, FSB | | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 888 E. WALNUT STREET | PASADENA | CA | 91101 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☒ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Loan #: 1013022674A NTCID: 11757860 Entered By: CPE State: HI County: Bureau Of Conveyances

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

Bk: Pg: Instr#: 2007-031155 Date: 02/20/2007

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME |
|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT ADDENDUM (FORM UCC3Ad) (REV. 07/29/98)

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

LA JOLLA BANK, FSB
390 WEST VALLEY PARKWAY
ESCONDIDO, CA 92025

*15 RS*

*TG: 200665876-S*

*PAGES: 4*

R-713    STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
FEB 20, 2007        10:00 AM

Doc No(s) 2007-031158

/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

20    15/18  Z9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1335 HOTEL CIRCLE S. | SAN DIEGO | CA | 92108 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | CA | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LA JOLLA BANK, FSB | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 390 WEST VALLEY PARKWAY | ESCONDIDO | CA | 92025 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL OF THE FOLLOWING, TO THE EXTENT LOCATED ON, USED IN CONNECTION WITH OR RELATED TO THE REAL PROPERTY DESCRIBED BELOW: INVENTORY, ACCOUNTS, FIXTURES, EQUIPMENT, PLAN, PERMITS, BOOKS, RECORDS, CONTRACT RIGHTS, DEPOSITS, PREPAID RENTS, INSTRUMENTS, LETTERS OF CREDIT, CLAIMS, CAUSES OF ACTION, LAWSUITS, JUDGEMENTS, AWARDS, GENERAL INTANGIBLES, AND LOAN PROCEEDS; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA

ACKNOWLEDGEMENT COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed 04/05/11  Page 31 of 93

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR **WESTERN APARTMENT SUPPLY & MAINTENANCE CO.**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | □ NONE |
|---|---|---|---|---|---|

**12. □ ADDITIONAL SECURED PARTY'S** or □ **ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a ☑ fixture filing.

**14.** Description of real estate:

**16. Additional collateral description:**

**16.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

**18.** Check only if applicable and check only one box.

□ Debtor is a TRANSMITTING UTILITY

□ Filed in connection with a Manufactured-Home Transaction — effective 30 years

□ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 32 of 93

## EXHIBIT "A"

UNRECORDED GENERAL LEASE NO. S-4212

| | | |
|---|---|---|
| LESSOR | : | STATE OF HAWAII, by its Board of land and Natural Resources |
| LESSEE | : | WALTER C. WITTE and JOHN J. FAGAN |
| DATED | : | September 4, 1968 |
| FILED | : | State of Hawaii, Department of Land and Natural Resources |
| TERM | : | 65 years commencing dated hereof, up to and including September 3, 2033 |

THE LESSEE'S INTEREST BY MESNE ASSIGNMENTS ASSIGNED

| | | |
|---|---|---|
| ASSIGNOR | : | TOWA SHINYO MAUI, INC., a Hawaii corporation |
| ASSIGNEE | : | WESTERN APARTMENT SUPPLY & MAINTENANCE CO., a California corporation |
| DATED | : | February 29, 2000 |
| RECORDED | : | Document No. 2000-082846 |
| CONSENT | : | Given by the STATE OF HAWAII, by and through its Board of Land and Natural Resources, by instrument recorded as Document No. 2000-082847 |

Said Lease demising the following described premises:

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by government land of Kamaole situate on the west side of Piilani Highway adjoining Land Patent Grant Number 13,225 to Yasuko N. Watanabe and Royal Patent Grant Number 1959 to Mahi) situate, lying and being at Kamaole, Wailuku, Kula, Island and County of Maui, State of Hawaii, and thus bounded and described:

Beginning at the southeast corner of this parcel of land, at the northeast corner of Grant 13225 to Yasuko N. Watanabe and on the west side of Piilani Highway, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU O KALI" being 9,644.91 feet south and 20,033.00 feet west, as shown on Government Survey Registered Map 3005 and running by azimuths measured clockwise from true South:

| 1. | 84° | 30' | | 356.83 | feet along Grant 13225 to Yasuko H. Watanabe and Grant 1959 to Mahi; |
|----|-----|-----|---|--------|----|
| 2. | 171° | 30' | | 132.00 | feet along Government Beach Reserve; |
| 3. | 264° | 30' | | 383.09 | feet along Government Beach Reserve; |
| 4. | 3° | 07' | | 84.52 | feet along the west side of Piilani Highway; |

5. Thence along the west side of Piilani Highway, on a curve to the left having a radius of 1,939.86 feet, the chord azimuth and distance being:

| | 2° | 23' | 50" | 48.71 | feet to the point of beginning and containing an area of 1.119 acres, more or less. |
|---|-----|-----|------|-------|----|



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
J. Lesinski  (727) 777-4000 ext 275

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
1073800076A OWBFA HI Bureau Of Conveyances



R-921       STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
AUG 24, 2010       01:00 PM

Doc No(s) 2010-123196



20   1/1   Z12

/s/ NICKI ANN THOMPSON
REGISTRAR

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE#**<br>Bk: Pg: Instr#: 2007-031158 Date: 02/20/2007 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is<br>to be filed [for record] (or recorded) in the<br>REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| | | | |
|---|---|---|---|
| **6a. ORGANIZATION'S NAME**<br>WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | | | |
| OR   **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | | | |
|---|---|---|---|
| **7a. ORGANIZATION'S NAME**<br>OneWest Bank, FSB | | | |
| OR   **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

| **7c. MAILING ADDRESS**<br>888 E. WALNUT STREET | **CITY**<br>PASADENA | **STATE**<br>CA | **POSTAL CODE**<br>91101 | **COUNTRY**<br>USA |
|---|---|---|---|---|

| **7d. SEE INSTRUCTIONS** | ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID #, if any**<br>☒ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | | | |
|---|---|---|---|
| **9a. ORGANIZATION'S NAME**<br>FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | | |
| OR   **9b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
Loan #: 1073800076A NTCID: 11757865 Entered By: CPE State: HI County: Bureau Of Conveyances

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)**

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as Item 1a on Amendment form)

Bk: Pg: Instr#: 2007-031158 Date: 02/20/2007

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

12a. ORGANIZATION'S NAME
FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB

| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|----|------------------------------|------------|---------------------|
|    |                              |            |                     |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

# Exhibit B

# Exhibit B

# Maui Oceanfront Days Inn
## APRIL, MAY, JUNE OPERATING BUDGET

| CATEGORY | Apr 2011 | May 2011 | Jun 2011 | Total |
|---|---|---|---|---|
| **Income Summary** | | | | |
| | | | | |
| **STATS** | | | | |
| Rooms Available | 2,610 | 2,697 | 2,610 | 7,917 |
| Rooms Sold | 2,100 | 2,108 | 2,010 | 6,218 |
| ADR | 107.20 | 104.39 | 102.96 | 104.88 |
| Occupancy % | 80.46% | 78.16% | 77.01% | 78.54% |
| RevPar | 86.25 | 81.59 | 79.29 | 82.37 |
| | | | | |
| **REVENUE** | | | | |
| Room Revenues | 225,120 | 220,054 | 206,955 | 652,129 |
| Telecomm Revenues | 0 | 0 | 0 | 0 |
| Other Revenues | 54,603 | 53,932 | 52,197 | 160,732 |
| Total Revenues | 279,723 | 273,986 | 259,152 | 812,861 |
| | | | | |
| **Departmental Expenses** | | | | |
| Room Expenses | 47,410 | 49,196 | 47,498 | 144,105 |
| Telecomm Expenses | 800 | 800 | 800 | 2,400 |
| Other Expenses | 0 | 0 | 0 | 0 |
| Total Departmental Expenses | 48,210 | 49,996 | 48,298 | 146,505 |
| | | | | |
| Total Departmental Income | 231,513 | 223,990 | 210,853 | 666,356 |
| | | | | |
| **Undistributed Operating Expenses** | | | | |
| Admin.& General Expenses | 17,067 | 17,067 | 22,067 | 56,201 |
| Sales & Marketing Expenses | 1,200 | 1,200 | 1,200 | 3,600 |
| Repairs & Maint. Expenses | 7,293 | 6,893 | 8,493 | 22,678 |
| Utilities Expenses | 12,320 | 12,154 | 11,326 | 35,800 |
| Franchise Fee Expenses | 21,977 | 21,594 | 21,860 | 65,431 |
| Total Undistributed expenses | 59,857 | 58,908 | 64,946 | 183,710 |
| | | | | |
| **Gross Operating Profit** | 171,656 | 165,082 | 145,908 | 482,646 |
| | | | | |
| **Management Fees** | 4,500 | 4,500 | 4,500 | 13,500 |
| | | | | |
| **Income before Fixed Charges** | 167,156 | 160,582 | 141,408 | 469,146 |
| | | | | |
| Insurance | 7,457 | 7,457 | 7,457 | 22,371 |
| Property Taxes | 0 | 0 | 0 | 0 |
| Interest | 0 | 0 | 0 | 0 |
| Owners Expense | 0 | 0 | 0 | 0 |
| Equipment Lease | 300 | 0 | 0 | 300 |
| GET & TAT Payments | 29,828 | 29,157 | 27,422 | 86,407 |
| Land Lease | 127 | 127 | 127 | 381 |
| Total Fixed | 38,112 | 37,141 | 35,406 | 110,659 |
| | | | | |
| **Net Operating Income** | 129,044 | 123,441 | 106,002 | 358,487 |
| | | | | |
| Debt Service | 60,000 | 60,000 | 60,000 | 180,000 |
| | | | | |
| **Net Income** | 69,044 | 63,441 | 46,002 | 178,487 |

4/5/2011 at 3:06:42 PM

Exhibit B

# Exhibit C

# Exhibit C

# Exhibit C

O'CONNOR PLAYDON & GUBEN LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN    3107-0
JEFFERY S. FLORES     8691-0
733 Bishop Street, 24th Floor
Honolulu, Hawaii  96813
Telephone:  (808) 524-8350
Facsimile:  (808) 531-8628
jkg@opglaw.com
jsf@opglaw.com

Attorneys for Debtor,
WESTERN APARTMENT SUPPLY &
MAINTENANCE CO.

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>WESTERN APARTMENT SUPPLY<br>& MAINTENANCE CO.,<br>a California corporation,<br><br>　　　　　　　Debtor. | Case No. _____<br>(Chapter 11)<br><br>*Preliminary Hearing:*<br>Date:<br>Time:<br>Judge:  Honorable Robert J. Faris<br><br><br>*Final Hearing:*<br>Date:<br>Time:<br>Judge:  Honorable Robert J. Faris |

## STIPULATION AND AGREED INTERIM ORDER
### (i) AUTHORZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 363(c)(2), (ii) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, (iii) SCHEDULING OF FINAL HEARING, AND (iv) GRANTING RELATED RELIEF; EXHIBITS A and B

233937v1/11-63/JSF

Exhibit C

Upon Western Apartment Supply & Maintenance Co. (hereinafter "Debtor" or "Borrower") Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2), (ii) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (iii) Scheduling a Final Hearing, and (iv) Granting Related Relief ("Cash Collateral Motion"), wherein the Debtor moved this Court for, among other things, the entry of an interim order (this "Interim Order") authorizing the Debtor' use of cash collateral on an interim basis (the "Interim Relief), and after notice and a hearing on the Interim Relief, the Court finds, subject to the terms and conditions hereof, that (i) the Interim Relief requested in the Cash Collateral Motion is in the best interests of the Debtor, its estate and its creditors; (ii) the Interim Relief is necessary to provide the Debtor with sufficient cash and liquidity to avoid immediate and irreparable harm during the term of this Interim Order; (iii) in accordance with Rule 4001(a), (b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and LBR 4001 -2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Hawaii (the "Local Rules"), due and proper notice of the Cash Collateral Motion and the hearing on the Interim Relief has been given, and no other or further notice is necessary with respect to the Interim Relief; and (iv) upon the record herein, including, without limitation, statements of counsel, after due deliberation thereon, good and sufficient cause

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed 04/05/11  Page 41 of 93

exists for the entry of this Interim Order granting the Interim Relief as set forth herein. Therefore,

THE COURT HEREBY FINDS AND CONCLUDES that,

## I.   BACKGROUND

A.   On April 5, 2011, (the "Petition Date"), the Debtor commenced this Chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Hawaii (the "Court").

B.   The Debtor continues to operate its business and manage the Maui Oceanfront Inn ("MOI") as Debtor-in-Possession pursuant to Sections 107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Cases, and no official committee of unsecured creditors or other statutory committee (an "Official Committee") has been formed as of the hearing on the Interim Relief.

C.   The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this Chapter 11 Case, and over the persons and property affected hereby. Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are Sections 105, 361, 363 and 507 of the Bankruptcy Code, Bankruptcy

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 42 of 93

Rules 4001(a), (b) and (d) and 6003 and Local Rule 4001-2.

## II. PRE-PETITION SECURED LOANS PROVIDED BY LA JOLLA BANK, ASSIGNED TO ONEWEST BANK AND TAX LIENS

D.    Prior to the filing of the petition, the Debtor and La Jolla Bank entered executed two promissory notes on February 2007, the first in the principal amount of $12,200,000 and the second in the principal amount of $300,000. This is documented in the Title Guaranty of Hawaii, Inc. UCC Uniform Commercial Code Lien Search, dated March 7, 2011. See Exhibit A. These promissory Notes were subsequently assigned to One West Bank in or around June 2010.

E.    To secure its obligations under the Secured Loan Agreements, the Borrower granted to OneWest Bank a first priority security interest in, a lien upon, and a right of set off against, and assignment to OneWest Bank as security, all of the following property of the Borrower, whether now owned or hereafter acquired or existing, and wherever located (collectively, including "Cash Collateral (defined below), the "Pre-Petition Collateral"):

i. All of the Borrower's assets, owned now or acquired in the future and wherever located, including but not limited to: inventory, accounts, fixtures, equipment, plans, permits, books, records, contract rights, deposits, prepaid rents, instruments, letters of credit, claims, causes of action, lawsuits, judgments, awards, general intangibles and loan proceeds; accessions, additions,

replacements, and substitutions related to the foregoing, all records of any kind relating to any of the foregoing; all proceeds related to the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

        ii.    Assignment of the Certificate of Deposit, described in the Assignment of Deposit Account, dated February 13, 2007.

        iii.    Assignment of all rent on real property located in Maui County, State of Hawaii.

        F.    Without prejudice to the rights of any other party (but subject to the Debtor acknowledges and stipulates that, in accordance with the terms of the Secured Loan Agreements, the Debtor is indebted to OneWest Bank, without defense, counterclaim or offset of any kind, and that as of March 16, 2011, (i) the Debtor is liable to OneWest Bank in respect to the loans made, and certain accrued and unaccrued interest, costs and fees, pursuant to the Secured Loan Agreements in the aggregate amount of approximately $12,830,300.00 on Loan No. 10-1322674 and $349,366.34 on Loan No. 18-7300076 (exclusive of certain interest and fees accrued and unpaid thereon and other costs, expenses and indemnities) (the "Pre-Petition Loan Indebtedness"), and (ii) pursuant to the Secured Loan Agreements, the Debtor is liable to OneWest Bank for accrued and unpaid interest, commitment fees, attorneys' and advisors' fees, other out-of-pocket expenses, costs and

indemnities (collectively, subsections (i) and (ii) of this section are the "Secured Loan Obligations"). These amounts have been provided by OneWest and the Debtor reserves the right to contest any amount claimed by OneWest.

G. Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that under the Secured Loan Agreements and as security for repayment of the Secured Loan Obligations, the Debtor granted to OneWest Bank's security interests in, and liens upon, the Pre-Petition Collateral.

H. Without prejudice to the rights of any party, the Debtor acknowledges and stipulates that OneWest Bank's security interests in, and liens on, the Pre-Petition Collateral that constitute proceeds of the Pre-Petition Collateral are cash collateral of OneWest Bank within the meaning of Bankruptcy Code § 363(a) ("Cash Collateral"). OneWest Bank is entitled, pursuant to Bankruptcy Code §§361 and 363(e), to adequate protection of its interest in the Pre-Petition Collateral, including for the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral other than Cash Collateral, and for the imposition of the automatic stay.

I. The Department of Taxation, State of Hawaii (the "Department") claims valid, perfected, and unavoidable liens against all of the Debtor's property pursuant to the following Certificate of Tax Lien at the Bureau of Conveyances, State of Hawaii:

i.      Certificate of Tax Lien, dated February 23, 2010 filed as Document No. 2010-024805.

ii.     Certificate of Tax Lien, dated June 9, 2010 filed as Document No. 2010-080078.

iii.    Certificate of Tax Lien, dated August 17, 2010 filed as Document No. 2010-118983.

iv.     Certificate of Tax Lien, dated October 18, 2010 filed as Document No. 2010-157287.

v.      Certificate of Tax Lien, dated November 23, 2010 filed as Document No. 2010-181451.

vi. Certificate of Tax Lien, dated March 4, 2011 filed as Document No. 2011-038122.

J.      The outstanding balance of the secured tax claim by the Department as of the petition date is $174,200.03.


K.      The Department claims junior lien interests in the assets of the Debtor held as of the Petition Date.

L.      In accordance with Section 552(b) of the Bankruptcy Code, the Pre-Petition Collateral includes, without limitation, all proceeds, products and profits of the Pre-Petition Collateral, whether existing before or after the commencement of the Chapter 11 Cases, "Available Cash" shall consist of the

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 46 of 93

Debtor's cash and cash equivalents that are subject to the existing liens of OneWest Bank. The Debtor acknowledges and stipulates that, as of the Petition Date, all of the Available Cash is the proceeds, products and profits of the Pre-Petition Collateral.

M.    The Debtor acknowledges and agrees that all of the Available Cash held on the Petition Date together with any cash or cash equivalent proceeds of the Pre-Petition Collateral received on or after the Petition Date shall constitute Cash Collateral.

N.    Without prejudice to the rights of any party, the Debtor acknowledges and agrees that (i) the Secured Loan Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Secured Loan Agreements (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (ii) no offsets, defenses or counterclaims exist to the currently outstanding Secured Loan Obligations, (iii) OneWest Bank liens and security interests are first priority, valid, enforceable, perfected and not subject to avoidance, subordination or challenge; and (iv) no portion of the Secured Loan Obligations is subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

O. The Debtor acknowledges and agrees that the value of the Pre-

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 47 of 93

Petition Collateral exceeds the amount of the Secured Loan Obligations and tax liens outstanding as of the Petition Date.

## III.    THE DEBTOR'S NEED FOR USE OF CASH COLLATERAL

P.    An immediate need exists for the Debtor to have access to the Cash Collateral in order to continue its operations, meet its payroll and other necessary, ordinary course business expenditures, administer and preserve the value of its estate, and maintain adequate access to cash in amounts customary and necessary for a company of this size in this industry to maintain customer and vendor confidence. The ability of the Debtor to finance its operations by way of working capital requires its access to cash resources, the absence of which would immediately and irreparably harm the Debtor, its estate, and its creditors. The Debtor requires these cash resources to operate its businesses, preserve the confidences of vendors, suppliers and customers, and to preserve the value of their businesses.

Q.    The Debtor has requested, pursuant to Section 363(c) of the Bankruptcy Code, that OneWest Bank consent to the Debtor' use of Cash Collateral and the Debtor' use, sale and lease of the other Pre-Petition Collateral pursuant to the terms and conditions of this Interim Order during the Interim Cash Collateral Period (as defined below). The Debtor acknowledges and agrees that OneWest Bank is entitled to adequate protection pursuant to Sections 361 and

363(e) of the Bankruptcy Code with respect to Cash Collateral and other Pre-Petition Collateral, including, without limitation, to compensate OneWest Bank for any loss or diminution in the value of Cash Collateral or other Pre-Petition Collateral resulting from the Debtor' use of Cash Collateral, the use, sale or lease of other Pre-Petition Collateral and the imposition of the automatic stay during the Interim Cash Collateral Period.

  R. Subject to the entry, and continued effectiveness, of this Interim Order, OneWest Bank and the Department have consented to the Debtor's use of Cash Collateral and use, sale or lease of other Pre-Petition Collateral during the Interim Cash Collateral Period. The foregoing notwithstanding, nothing in this Interim Order shall be construed as limiting or prohibiting OneWest Bank or the Department from objecting to any relief sought by the Debtor in this Chapter 11 case, including, without limitation, any DIP Financing1[1] or any motion for the further use of Cash Collateral, other than the entry of this Interim Order and any Final Order entered on the Cash Collateral Motion ("Final Order"), provided such Final Order is on terms acceptable to OneWest Bank and the Department.

  S. The Interim Relief requested herein is, subject to the terms and conditions hereof, necessary, essential and appropriate for the continued operations

---

[1] The term "DIP Financing" means any debtor-in-possession financing facility, cash loans or liquidity facility provided to the Debtor pursuant to Section 364 of the Bankruptcy Code secured by liens on and against property of the Debtor's estate. Any party that provides the Debtor with DIP Financing shall be referred to as a "DIP Lender."

U.S. Bankruptcy Court - Hawaii #11-00941 Dkt # 2 Filed 04/05/11 Page 49 of 93

of the Debtor's business and the preservation of its estate and the value of the Debtor's business.

T.     Good and sufficient cause has been shown for the entry of this Interim Order. Among other things, the entry of this Interim Order is in the best interests of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue operating its businesses and avoid an immediate shutdown of operations, (ii) meet obligations for payroll, necessary expenditures, and other operating expenses, (iii) pay necessary fees and professional expenses under the Bankruptcy Code and make payments authorized under other orders entered by the Court, (iv) obtain needed goods and services, (v) retain vendor, patient and employee confidence, and (vi) maintain adequate cash resources customary and necessary for a retail operation of this size, thereby avoiding immediate and irreparable harm to the Debtor's estate.

U.     Prior notice of the hearing (the "Interim Hearing'") for the entry of the Interim Order and the Interim Relief requested in the Cash Collateral Motion was given by the Debtor to (i) the office of the United States Trustee for the District of Hawaii; (ii) OneWest Bank; (iii) all known parties asserting liens on the Debtor's assets; (iii) counsel to OneWest Bank; (iv) the State of Hawaii, Department of Taxation, and (v) the parties listed on the Debtor's list of twenty (20) largest unsecured creditors (the "Initial Notice Parties"). Requisite, due and

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 50 of 93

proper notice has been provided in accordance with Bankruptcy Rule 4001 and Local Rule 4001-2, which notice is sufficient for all purposes under the Bankruptcy Code and no other notice need be provided for entry of this Interim Order.

V. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 6004(g), and OneWest Bank and the Department have consented to the Interim Relief contained herein. Good and sufficient cause has been shown for the entry of this Interim Order.

NOW, based upon the Cash Collateral Motion of the Debtor and the record before the Court with respect to the Cash Collateral Motion made by the Debtor at the Interim Hearing, and good cause appearing therefor,

IT IS ORDERED, ADJUDGED AND DECREED effective immediately that:

1. The Cash Collateral Motion is GRANTED with respect to the Interim Relief on the terms and conditions set forth herein. The findings and conclusions above are true in all respects and incorporated by reference in this Interim Order.

2. (a) <u>Period of Interim Relief</u>. Any provision of the Bankruptcy Code or the Bankruptcy Rules notwithstanding, this Interim Order shall take effect

immediately on the Petition Date. So long as no breach of the termination provisions hereof has occurred, this Interim Order shall remain in effect until the earliest of the close of business on _____, or such period as it may be extended pursuant to the following proviso, the "Interim Cash Collateral Period'"). The Debtor's ability and authorization to use Cash Collateral during the Interim Cash Collateral Period shall at all times be subject to the termination provisions of this Interim Order.

(b)    During the Interim Cash Collateral Period, the Debtor waives any right to seek relief under the Bankruptcy Code, including, without limitation, under Sections 105(a) and 363(c), to the extent any such relief would in any way restrict or impair the rights and remedies of OneWest Bank or the Department as set forth in this Interim Order; provided, however, (i) after the occurrence of a termination event set forth hereof, the Debtor may seek entry of an Order authorizing the use of Cash Collateral over OneWest Bank's and/or the Department's objection; (ii) at any time, the Debtor may seek to sell the Pre-Petition Collateral; and (iii) with respects to sub-paragraphs (i) and (ii) above, OneWest Bank and the Department reserve all rights and remedies, under the Bankruptcy Code, this Interim Order or otherwise, including, without limitation, the right to object to such relief. If the Debtor, or any other person, challenges the expiration or termination of the Interim Cash Collateral Period, any such objector's

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 52 of 93

remedy shall be limited to requesting a hearing before the Court, with at least three (3) business days' written notice to OneWest Bank and the Department. In any such hearing, the sole issue before the Court shall be whether the Interim Cash Collateral Period expired or was terminated pursuant to the terms of this Interim Order. A change in circumstances shall not be grounds for modification of this Section 2(b).

## GOOD FAITH, RELIANCE AND CONDUCT

3.     The Debtor, OneWest Bank, and the Department and their respective agents, advisors and employees have acted in good faith in negotiating, consenting and agreeing to the Debtor's use of Cash Collateral and use, sale and lease of other Pre-Petition Collateral as contemplated and provided by this Interim Order. The negotiation of the terms and provisions of this Interim Order have been conducted at arm's length, and the Court finds that such terms and conditions are fair and reasonable, under the circumstances, and reflect the Debtor's exercise of reasonable business judgment consistent with the Debtor's fiduciary duties.

4.     To the extent OneWest Bank and the Department are not secured in the Pre-Petition Collateral, they shall not have a Replacement Lien (as defined below) or a Superpriority Claim (as defined below) with regard to any use of such Cash Collateral which is not found to be Cash Collateral of OneWest Bank or the Department pursuant to Section 363 of the Bankruptcy Code. In the event

that any Court of competent jurisdiction determines, in a final non-appealable order, that OneWest Bank or the Department was undersecured or unsecured as of the Petition Date, and not entitled to be paid interest, fees and related charges post-petition, then (i) the Debtor's obligations to make all payments and to comply with all other terms and conditions established by this Interim Order shall not terminate or abate, but all such payments of interest, fees and related charges paid during the Interim Cash Collateral Period shall be applied to the secured principal amount of the Secured Loan Obligations as of the Petition Date, or as may otherwise be provided in such order, and (ii) OneWest Bank and the Department shall be entitled to a hearing before the Court with at least three (3) business days' written notice to the Debtor and its counsel, re-examining the adequate protection of its secured interests in the Pre-Petition Collateral and Replacement Collateral, and the authority of the Debtor to use Cash Collateral.

5.    (a)    Nothing in this Interim Order, the Secured Loan Agreements or any related documents shall in any way be construed or interpreted to impose or allow the imposition upon OneWest Bank and the Department or its agents, advisors or employees (in their capacities as such) any liability for any claims arising from the activities of the Debtor or any of its affiliates, before or after the Petition Date, in the operation of its businesses, or in connection with its restructuring efforts.

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 54 of 93

(b)     In exercising any of their rights or remedies, as and when permitted pursuant to this Interim Order or the Secured Loan Agreements, OneWest Bank shall not be deemed to be in control of the operations of the Debtor.

(c)     In exercising any of their rights or remedies, as and when permitted pursuant to this Interim Order or the tax liens, the Department shall not be deemed to be in control of the operations of the Debtor.

6.     Based on the findings set forth in this Interim Order, and OneWest Bank and the Department's reliance in good faith on the terms thereof, if any of the provisions of this Interim Order are hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any claim, lien, security interest or priority authorized for OneWest Bank and the Department's benefit that is granted or attaches prior to the effective date of such stay, modification or vacation, and any use of Cash Collateral or use, sale or lease of other Pre-Petition Collateral by the Debtor pursuant to this Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Interim Order.

## AUTHORIZED USE OF CASH COLLATERAL

7.     The Debtor is hereby authorized to use Cash Collateral during

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 55 of 93

the Interim Cash Collateral Period, subject to the conditions and limitations set forth herein.

8.      Authorized Uses of Cash Collateral. The Debtor may use Cash Collateral during the Interim Cash Collateral Period, as limited by the Budget attached hereto as Exhibit B, to pay only the ordinary and reasonable expenses of operating its businesses which are necessary to avoid immediate and irreparable harm.

9.      Secured Loan Agreement Amendments. During the Interim Cash Collateral Period, the material terms of the Secured Loan Agreements shall continue in full force and effect except as may be modified by operation of law or pursuant to the terms of this Interim Order.

## ADEQUATE PROTECTION IN FAVOR OF ONEWEST BANK FOR THE DEBTOR'S USE OF CASH COLLATERAL

10.     Adequate Protection. On account of the Debtor's use of Cash Collateral, its use, sale or lease of the other Pre-Petition Collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, in each case during the Interim Cash Collateral Period, OneWest Bank is hereby granted the following adequate protection pursuant to Sections 361 and 363(e) of the Bankruptcy Code:

(a)     Interest Fees and Costs. The Debtor shall pay OneWest Bank the amount of $60,000.00 per month, or until further order of the Court. All

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 56 of 93

such payments of interest shall be calculated at the applicable interest rate under the Secured Loan Agreements in effect as of the Petition Date. The $60,000.00 will be paid by way of a payment of the Sarentos on the Beach monthly rent and the remainder of the $60,000.00 to be paid by the Debtor on or before the entry of the next Cash Collateral Order. In the event Debtor fails to timely pay any amounts required hereunder (including all present and future fees, out-of-pocket costs and expenses paid or incurred by OneWest Bank (including, without limitation, any fees and expenses of OneWest Bank's professionals (defined herein) or any auditors) respecting the filing of the Chapter 11 Cases, OneWest Bank may charge all of such costs, fees and expenses to the Borrower's Secured Loans.

(b)　　Replacement Collateral and Replacement Liens. The Debtor hereby grants, assigns and pledges to OneWest Bank and the Department valid, perfected and enforceable liens and security interests (the "Replacement Liens") in all of the Borrower Accounts created from and after the Petition Date and all of the Debtor' right, title and interest in, to and under the Pre-Petition Collateral, to the extent same existed on the Petition Date and the proceeds, products, offspring, rents and profits of all of the foregoing, all as may otherwise be described in the Secured Loan Agreements, (collectively, the "Replacement Collateral). The Replacement Liens granted hereunder shall be limited in amount to the aggregate diminution in value of the interests of OneWest Bank and the

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 57 of 93

Department in the Pre-Petition Collateral and Cash Collateral during the Interim Cash Collateral Period (the "Interim Replacement Value").

(c)     <u>Automatic Perfection of Replacement Liens</u>.     The Replacement Liens granted under this Interim Order shall be valid, perfected and enforceable against the Replacement Collateral as of the Petition Date without further filing or recording of any document or instrument or the taking of any further actions, and shall not be subject to dispute, avoidance or subordination as to the Interim Replacement Value. Notwithstanding the automatic perfection of the Replacement Liens granted pursuant to this Interim Order, OneWest Bank and the Department are hereby authorized, but not required, to file or record financing statements, trademark filings, mortgages, notices of lien and other similar instruments in any jurisdiction, and to take any other action it deems necessary or appropriate in order to validate, evidence or perfect such Replacement Liens. A certified copy of this Interim Order may, in OneWest Bank and/or the Department's discretion, be filed or recorded with any filing or recording offices in addition to, or in lieu of, such financing statements, mortgages, notices of lien or other similar instruments, and all filing or recording offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording. The Debtor is authorized and directed to execute and deliver all instruments and documents prepared by OneWest Bank and/or the Department, and to pay all

reasonable fees and expenses, that are reasonably required or necessary to facilitate any such filings or recordings elected to be made by OneWest Bank and/or the Department.

        (d)    <u>Priority of Replacement Liens</u>. The Replacement Liens granted hereunder shall be subject and subordinate in priority to any liens, security interests and other encumbrances, existing as of the Petition Date, or which attach to the Replacement Collateral after the Petition Date, that are senior, valid, perfected, enforceable and unavoidable, that are granted with OneWest Bank's and the Department's consent or that are otherwise senior to the pre-petition liens in favor of OneWest Bank and the Department. The Replacement Liens shall be valid and enforceable against any trustee appointed in this Chapter 11 case, or in any subsequent proceeding affecting the Debtor, including any conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

        (e)    <u>Taxes</u>. The Debtor shall and hereby agrees to pay all post-petition federal, state and county taxes (other than real property taxes) as and when due, regardless of whether such taxes appear on the Budget.

        (f)    <u>Superpriority Administrative Expense Claim</u>. Subject and subordinate only to the Carve-Out, the Secured Loan Obligations are hereby granted and entitled to status as an administrative expense claim (the "Super-Priority Claim") pursuant to Section 507(b) of the Bankruptcy Code, with priority

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 59 of 93

over all other administrative expense claims, now existing or hereafter arising, of the kind specified in or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), and 1114 of the Bankruptcy Code. Such Super-Priority Claim shall be limited in amount to the Interim Replacement Value.

## THE BUDGET

11.    Attached to the Cash Collateral Motion as Exhibit B is a budget (the "Budget") for the next 30-60-90 days of operation, which has been prepared by the Debtor. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures and includes all necessary and required expenses which the Debtor expects to incur during the term of the Budget in order to avoid immediate and irreparable harm. The Debtor is authorized to use the Cash Collateral only for payment of such items as is set forth in the Budget, with allowance for a ten percent (20%) aggregate (and not line-item) variance on a rolling forward, cumulative basis and also subject to the terms and conditions set forth in the Secured Loan Agreements and this Interim Order; provided, however, for purposes of calculating such variance, any line item reflecting payment of professional fees shall not be included and no such professional shall be entitled to be paid more than is set forth on such line item (other than as set forth in Section 25). Any disbursement by the Debtor other than for budgeted amounts as set forth in the Budget shall constitute a termination event in accordance with the provisions of

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed 04/05/11  Page 60 of 93

this Interim Order unless OneWest Bank and the Department consent to those changes in writing or the Court enters an Order, after notice to OneWest Bank and the Department and a hearing. OneWest Bank is not required to advance to the Debtor any amounts that may be available for lending under the Secured Loan Agreements. So long as no defaults exist under this Interim Order, OneWest Bank and the Department shall consent to the use by the Debtor of such amounts of Cash Collateral authorized for use by the Debtor pursuant to the terms and conditions of this Interim Order and the Budget.

## DISCLOSURE REQUIRED OF THE DEBTOR

12.　　As additional adequate protection for the benefit of OneWest Bank and the Department, the Debtor shall provide OneWest Bank and the Department, by electronic mail or other reasonably acceptable means, the following information during the Interim Cash Collateral Period:

(a)　　<u>Reporting</u>. Copies of all reports as are required by the Secured Loan Agreements or such additional reports as OneWest Bank or the Department may reasonably request from time to time, all in form, detail and substance reasonably satisfactory to OneWest Bank and the Department.

(b)　　<u>Copies of Documents</u>. Copies of (i) all non-privileged reports, appraisals, business plans, investigations or other similar documents provided to OneWest Bank and the Department, its counsel or Official Committee

U.S. Bankruptcy Court - Hawaii　#11-00941　Dkt # 2　Filed　04/05/11　Page 61 of 93

or any potential DIP Lender, (ii) any and all audits prepared by the Debtor's controller;

(c)     Requests for Additional Information. Within two (2) business days or such other time period agreed to at the time of the request by OneWest Bank or the Department, the Debtor shall, to the extent possible, provide such requested non-privileged reports, analysis, documents and information as reasonably requested; and

13.     If the Debtor fails to deliver the reports, documents, information and analysis to OneWest Bank or the Department by the dates and times required under Section 12, OneWest Bank or the Department may request that the Court further restrict the Debtor's use of the Cash Collateral, and the Debtor agree that OneWest Bank or the Department's request shall be heard in an expedited manner by the Court with at least three (3) business days' written notice to the Debtor.

14.     Upon telephonic notice by OneWest Bank or the Department, the Debtor shall permit any of OneWest Bank's or the Department's agents, advisors, auditors and employees full and reasonable access, during normal business hours, to inspect, review and photocopy or otherwise duplicate (as applicable) the Debtor' books, records and place of business to verify the existence, condition, value and location of property in which OneWest Bank and the

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 62 of 93

Department hold liens or security interests. The Debtor shall permit, without material disruption to the operation of the Debtor's business, OneWest Bank's and the Department's agents and consultants (the "Lenders' Consultants"), full access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor to discuss such matters with its officers, independent auditors (and the Debtor hereby authorizes such independent auditors to discuss such matters with the Lenders' Consultants), and the Debtor shall cooperate with the Lender's Consultants in all respects. The Debtor shall provide OneWest Bank, the Department and the Lenders' Consultants, with reasonable promptness, such financial information concerning the Debtor's cash flow projections, business plan, and other aspects of operations as such parties may reasonably request from time to time except matters and documents that are privileged.

## ACCOUNTS

15. Except to the extent Section 345(b) of the Bankruptcy Code requires otherwise, the Debtor shall maintain its cash management system as in existence as of the Petition Date, except as may be modified by any final Order entered on the Debtor's Motion for Order Pursuant to 11 U.S.C. Sections 105(a), 363(c), 345(b) and 364 (I) Authorizing Continued Use of Existing (A) Bank

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 63 of 93

Accounts, (B) Cash Management System and (C) Business Forms, (II) Granting an Extension of Time to Comply with the Deposit Requirements of Section 345(b) of Bankruptcy Code and (III) Authorizing Continuation of Intercompany Transactions and According Administrative Expense Status to Claims for Such Transactions including the maintenance of the accounts specified.

## TERMINATION OF THE DEBTOR'S ABILITY TO USE CASH COLLATERAL

3.    The Debtor's ability to use Cash Collateral during the Interim Cash Collateral Period will terminate (i) immediately upon the occurrence of any event described in subsections (a), (c), (e), (f), (g) or (i) below, (ii) immediately at the close of business on the business day following the occurrence of an event described in either subsection (h) or (j) (unless such event of default has been cured), or (iii) if any event described in any other subsection below shall occur, three (3) business days after OneWest Bank or the Department delivers written notice to the Debtor that an event of default has occurred, unless such event of default has been fully cured within such three (3) business day period:

(a)    the expiration of the Interim Order as provided in Section 2 hereof, other than due to the entry of the Final Order or any other order of the Court approving the Debtor's use of Cash Collateral (subject to OneWest Bank and the Department), without OneWest Bank or the Department's prior written consent

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 64 of 93

to such extension of the Interim Cash Collateral Period;

(b)    the Debtor's failure to comply with/any of the material terms or conditions of this Interim Order;

(c)    the modification or extension of this Interim Order, without providing OneWest Bank or the Department a minimum of three (3) business days prior written notice of the hearing on such modification or extension;

(d)    the Debtor fails to remit any payments required under this Interim Order; an application is filed by the Debtor, without the prior written consent of OneWest Bank and the Department, for the approval of any claim arising under Section 507(b) of the Bankruptcy Code or any lien in the Chapter 11 Cases which is pari passu with or senior to the Super-Priority Claim or Replacement Liens, excluding, in all cases, the Super-Priority Claim, Replacement Liens or other liens arising under or otherwise permitted by this Interim Order;

(e)    the commencement of any action by the Debtor against OneWest Bank, the Department, their agents, advisors and/or employees, to subordinate, avoid or disallow any liens, security interests or claims made in connection with the Secured Loan Obligations;

(f)    (i) if the Chapter 11 case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (ii) the Debtor shall file a motion, or other pleading, seeking dismissal of the Chapter 11 case under Section

1112 of the Bankruptcy Code, or otherwise; or (iii) a trustee under Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the Debtor's business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106 of the Bankruptcy Code shall be appointed or elected in any of the Chapter 11 Cases;

(g)     (i) the Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (ii) any material provision of this Interim Order shall for any reason, other than the entry of the Final Order, or any other order of this Court approving the Debtor's use of Cash Collateral, cease to be valid and binding without the prior written consent of OneWest Bank;

(h)     any of the Borrowers fail in any material respect to comply with any provisions in the Secured Loan Agreements governing insurance on its properties or fails to comply with Sections 8.8 (a)-(d)(Accounts Covenants), 8.13 (Access to Premises), 8,17 (Collateral Reporting), or 8.22 (Dividends and Redemptions) of the Loan Agreement, except to the extent such compliance is excused by operation of the Bankruptcy Code;

(i)     he event OneWest Bank and the Department consent in writing to any DIP Financing, the occurrence of a default, material breach or termination event under the terms of such DIP Financing, or an order approving

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 66 of 93

such DIP Financing, shall constitute an event of default under this Interim Order as though this Interim Order contained such provisions in their entirety; or

(j) there shall occur a condition or event after the Petition Date that, in the reasonable judgment of OneWest Bank and the Department, could be reasonably expected to have a material adverse effect on the property, business, condition (financial or otherwise) or prospects of the Debtor.

Upon the occurrence of a termination event as set forth above (and including any applicable cure period), OneWest Bank and the Department's consent to the Debtor's use of Cash Collateral shall automatically terminate and the Debtor may not use, sell or lease Cash Collateral and shall segregate and account for any Cash Collateral in their possession, custody or control, and shall hold such Cash Collateral for the exclusive benefit of OneWest Bank, subject to further order of the Court.

## EXERCISE OF REMEDIES BY ONEWEST BANK

17. <u>Limitation on Exercise of Rights and Remedies</u>. OneWest Bank or the Department shall not take any action during the Interim Cash Collateral Period to seize or take control over any of the Cash Collateral, Pre-Petition Collateral, Replacement Collateral or the Debtor's other property, nor shall it impose freezes of assets or seek to exercise any alleged right of setoff or recoupment, or exercise any other right or remedy against the Pre-Petition

Collateral, Cash Collateral, Replacement Collateral or the Debtor's other property during the Interim Cash Collateral Period; provided, that OneWest Bank and the Department may do any of the foregoing after application to, and receiving authority from, the Court, to the extent necessary, upon a breach or violation by the Debtor of any of the terms or conditions of, or upon the termination of, this Interim Order.

18.     Additional Relief. Notwithstanding any provision hereof, this Interim Order is without prejudice to OneWest Bank's or the Department's rights to seek any other or additional relief in, or relating to, the Chapter 11 case, including, without limitation, relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code, and the filing of objections and/or claims relating to motions for adequate protection, or the use, sale, lease or other disposition of the Pre-Petition Collateral, Replacement Collateral or Cash Collateral. OneWest Bank and the Department expressly reserves its rights to claim that the provisions of this Interim Order do not constitute "adequate protection" for the purposes of Sections 361 and 363(c) and (e) of the Bankruptcy Code, or otherwise, and to request additional protection over and above the provisions of this Interim Order.

19.     No Waiver. Except as expressly set forth herein, no rights of OneWest Bank or the Department are waived pursuant to, or modified by, this Interim Order. OneWest Bank's and the Department's rights and remedies pursuant

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed 04/05/11  Page 68 of 93

to the Secured Loan Agreements and this Interim Order shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies. OneWest Bank's or the Department's failure, at any time or times hereafter, to require strict performance by the Debtor of any provision of this Interim Order shall not waive, affect or diminish any right of OneWest Bank or the Department thereafter to demand strict compliance and performance herewith. Any failure or delay on OneWest Bank or the Department part in the exercise of any rights, remedies, claims, powers, benefits or privileges under the Secured Loan Agreements or this Interim Order shall not constitute a waiver by OneWest Bank or the Department, subject OneWest Bank or the Department to any liability to any entity under this Interim Order or preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of OneWest Bank's or the Department's rights or remedies under this Interim Order shall be deemed to have been suspended or waived by OneWest Bank or the Department unless such suspension or waiver is in writing and directed to the Debtor or the Court specifying such suspension or waiver.

20. <u>No Reliance</u>. In the negotiation of this Interim Order, OneWest Bank did not, and during the Interim Cash Collateral Period, OneWest Bank or the Department do not, have any obligation or duty to any other entity to exercise any of their rights, remedies, claims, powers, benefit or privileges. No

entity may rely upon any delay or failure or in any way seek to assert a defense to any obligation owing to OneWest Bank or the Department based on OneWest Bank's or the Department's failure or delay to exercise its rights or remedies.

## ADDITIONAL PROVISIONS GOVERNING
## RIGHTS OF THE PARTIES

3.    <u>Challenge Rights</u>. The findings contained in recital paragraphs of this Interim Order shall be binding upon all parties in interest, including without limitation, the Debtor and any Official Committee, unless (a) a party in interest (other than the Debtor but including any Chapter 7 or Chapter 11 trustee appointed during the investigation period described in this paragraph) has filed an adversary proceeding challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Indebtedness or OneWest Bank liens or the Department's liens on the Pre-Petition Collateral in respect thereof, or otherwise asserting any claims or causes of action against OneWest Bank or the Department relating to the Pre-Petition Indebtedness, on behalf of the Debtor's estate, no later than the date that is forty-five (45) days after the Petition Date unless such deadline is extended by order of the Court by agreement of the parties or for good cause shown, and (b) the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding. If no such adversary proceeding is commenced as of such date, the Pre-Petition Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 70 of 93

unavoidable. For all purposes in the Chapter 11 Cases and any subsequent Chapter 7 case, OneWest Bank's liens and the Department's tax liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and OneWest Bank and the Department, the Pre-Petition Indebtedness and OneWest Bank liens and the Department's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without, limitation, any successor thereto. If any such adversary proceeding is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding.

21. <u>Carve-Out</u>. Prior to the Final Hearing, the Debtor and OneWest Bank and the Department shall attempt to negotiate an appropriate "carve-out" or similar procedure for the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to Bankruptcy Code §§ 327, 328 or 1103(a). Notwithstanding anything herein to the contrary, no Pre-Petition Collateral, Cash Collateral, or any portion of the Carve-Out may be used to object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Secured Loan Obligations or the

U.S. Bankruptcy Court - Hawaii #11-00941 Dkt # 2 Filed 04/05/11 Page 71 of 93

liens securing the Secured Loan Obligations, or to prosecute or assert any claims or causes of action against OneWest Bank. Nothing contained herein shall limit or impair OneWest Bank's or the Department's rights to object to any request for compensation submitted by any professional retained by the Debtor or any Official Committee, all of such rights being expressly preserved.

22.     Marshalling. Notwithstanding any other term or condition hereof, or of the Secured Loan Agreements, Neither OneWest Bank or the Department shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Pre-Petition Collateral or the Replacement Collateral.

## MISCELLANEOUS

23.     Binding Effect. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Debtor, OneWest Bank, the Department, any Official Committee, and any trustee subsequently appointed for the estate of the Debtor, whether in this Chapter 11 case or in the event of a conversion to a case under Chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

24.     Force and Effect. Jurisdiction. In the event that any order dismissing this Chapter 11 case is entered pursuant to Section 1112 of the Bankruptcy Code, or otherwise, (a) the Secured Loan Obligations, Replacement

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 72 of 93

Liens and Super-Priority Claim granted to or for the benefit of OneWest Bank and the Department pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all of the Secured Loan Obligations shall have been indefeasibly paid in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

25. <u>Continuing Effect of Secured Loan Agreements</u>. Except to the extent this Interim Order expressly provides otherwise, the Debtor shall continue to faithfully perform, and be bound by, terms of the Secured Loan Agreements. In the case of any conflict between the terms of the Secured Loan Agreements and this Interim Order, this Interim Order shall control.

26. <u>Titles and Headings</u>. The titles and headings in this Interim Order are and shall be without substantive meaning or content of any kind whatsoever.

27. <u>Time of the Essence</u>. Time is of the essence as to all terms, conditions and provisions set forth in this Interim Order.

28. <u>Amendment and Modification</u>. The terms and conditions in this Interim Order may not be amended, altered, modified or affected without the prior written consent of the Debtor, OneWest Bank and the Department; provided, however, OneWest Bank, the Department and the Debtor may make non-material

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed 04/05/11   Page 73 of 93

modifications or amendments to the Budget in a writing signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder.

29. Immediate Effect. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution thereof.

## NOTICE OF FINAL HEARING

30. <u>Final Hearing</u>. The Final Hearing on the Cash Collateral Motion is scheduled for _____. Following entry of this Interim Order, the Debtor shall immediately provide notice of the Cash Collateral Motion and a copy of this Interim Order and notice of the Final Hearing to (i) the Initial Notice Parties, (ii) any counsel to any Official Committee, and (iii) any party that has filed a request for notice in the Chapter 11 Case within 24 hours of the entry of this Order. Such notice shall constitute good and sufficient notice of the Final Hearing. The notice of approval of this Interim Order shall state that any party in interest objecting to the use of Cash Collateral or the terms of the Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than_____, which objections shall be served so that the same are received on or before such date by: (a) counsel to the Debtor, (b) counsel to any Official Committee; (c) the U.S. Trustee; (d) counsel to OneWest Bank; (e)

counsel to the Department. Any objections by creditors or other parties in interest to any of the provisions of this Interim Order shall be deemed waived unless filed and served in accordance with the notice on or before the close of business on such date.

## STIPULATION

31.     Stipulation for Use of Cash Collateral. On the date of the entry of this Order, Bank of Hawaii is holding sufficient funds to honor the pre-petition employee checks issued prior to  April 5, 2011, but uncashed as of April 5, 2011. As part of this Order, Bank of Hawaii is hereby authorized to pay and otherwise honor the employee checks, as if said checks were post-petition administrative checks. Bank of Hawaii is hereby authorized to honor said checks if presented for payment before the close of business on _____, 2011, and not thereafter.

Any additional sums in the operating account will be deemed OneWest Bank's adequate protection payment, in addition to the budgeted amounts.

32.     Retention of Jurisdiction. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

DATED:

*[Approve as to Form Next Page]*

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 75 of 93

APPROVED AS TO FORM:


_____
CURTIS B. CHING
Office of the United States Trustee


_____
TED PETIT
Attorney for Secured Creditor
 ONEWEST BANK


_____
CYNTHIA M. JOHIRO
Attorney for the State of Hawaii
DEPARTMENT OF TAXATION


_____
*In re Western Apartment Supply & Maintenance Co*., Case No._____ (Chapter 11);
**TIPULATION AND AGREED INTERIM ORDER (i) AUTHORZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 363(c)(2), (ii) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, (iii) SCHEDULING OF FINAL HEARING, AND (iv) GRANTING RELATED RELIEF; EXHIBITS A and B**

U.S. Bankruptcy Court - Hawaii   #11-00941   Dkt # 2   Filed  04/05/11   Page 76 of 93

# Title Guaranty of Hawaii, Inc.

**235 QUEEN STREET, HONOLULU, HI 96813 • P.O. BOX 3084, HONOLULU, HI 96802**

CSU3A   Phone (808) 533-6261   Fax (808) 521-0278

O'Connor Playdon & Guben LLP
Makai Tower
733 Bishop St, Ste 2400
Honolulu, HI 96813

Attention:  Julie Ratum

Re:  WESTERN APARTMENT SUPPLY
& MAINTENACE CO

## FINANCING STATEMENT AND LIEN REPORT

Maximum liability limited to
$3,500.00

We have made a search of the Indexes at the Bureau of Conveyances of the State of Hawaii and certify that the following is a list of: (1) all liens recorded in said Indexes; and (2) all U.C.C. financing statements and assignments thereof which have been recorded or for which a valid continuation statement has been recorded in said Indexes within the period beginning five (5) years and six (6) months prior to the date of this report and ending on the date of this report; against:

**WESTERN APARTMENT SUPPLY & MAINTENACE CO**

**LIENS:**

1. **STATE TAX LIEN recorded as Document No. <u>2010-024805</u>**
2. **STATE TAX LIEN recorded as Document No. <u>2010-080078</u>**
3. **STATE TAX LIEN recorded as Document No. <u>2010-118983</u>**
4. **STATE TAX LIEN recorded as Document No. <u>2010-157287</u>**
5. **STATE TAX LIEN recorded as Document No. <u>2010-181451</u>**
6. **STATE TAX LIEN recorded as Document No. <u>2011-038122</u>**

Exhibit A

**FINANCING STATEMENTS:**

1. **FINANCING STATEMENT recorded as Document No. <u>2007-031155</u>**
   **AMENDMENT recorded as Document No. <u>2010-123201</u>**
2. **FINANCING STATEMENT recorded as Document No. <u>2007-031158</u>**
   **AMENDMENT recorded as Document No. <u>2010-123196</u>**

(See photocopies attached, if any reported above)

-Note:-     No search has been made for, and this report does not cover: (1) any
            financing statements incorporated in a mortgage; and (2) any financing
            statements or other instruments affecting the same which may have been
            recorded or registered in the filing office of another state or country.

This report is dated March 7, 2011 at 8:00 a.m.

Inquiries concerning this report should be directed to
Christine Oishi
Email: coishi@tghawaii.com
Fax: 521-0278
Telephone (808)-533-5855
Refer to Order No. 201109654



R-694    **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
FEB 23, 2010    01:00 PM

Doc No(s) 2010-024805





/s/ NICKI ANN THOMPSON
**REGISTRAR**

20   26/27   Z12

---

After Recordation Return By: Mail ☐   Pickup ☒   To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
                          MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
                               San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 11/09 | | 3,541.76 |
| | Transient Accommodations | TA-01 | 11/09 | | 5,214.72 |
| | | | | **Total:** | **$8,756.48** |

Dated: WAILUKU, Hawaii
       February 10, 2010

Director of Taxation of the State of Hawaii

COUNTY OF MAUI           } SS      By:
STATE OF HAWAII         }            S. Hondo, Delinquent Tax Collection Assistant

On this 10th day of February, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated February 10, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013





R-550    **STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED**
JUN 09, 2010    09:00 AM

Doc No(s) 2010-080078



/s/ NICKI ANN THOMPSON
REGISTRAR

20   21/21  Z12

---

After Recordation Return By: Mail ☐ Pickup ☒ To:

| | |
|---|---|
| DEPARTMENT OF TAXATION<br>Compliance Division - Collection Branch<br>P.O. Box 259<br>Honolulu, HI 96809 | STATE OF HAWAII<br>Department of Taxation<br>Compliance Division |

---

Form D-15 (Rev. 2009)    STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 02/10 | | 10,193.99 |
| | Transient Accommodations | TA-01 | 02/10 | | 17,992.07 |
| | | | | Total: | **$28,186.06** |

Dated: WAILUKU, Hawaii
    June 2, 2010

Director of Taxation of the State of Hawaii

By: _____
    S. Hondo, Delinquent Tax Collection Assistant

COUNTY OF MAUI    } SS
STATE OF HAWAII    }

On this 2nd day of June, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated June 2, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

DENISE CORDEIRO
NOTARY
PUBLIC
No. 89-568
STATE OF HAWAII





R-514 STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
AUG 17, 2010 08:02 AM
Doc No(s) 2010-118983

/s/ NICKI ANN THOMPSON
REGISTRAR

20 20/22 Z14

After Recordation Return By: Mail ☐ Pickup ☒ To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):  WESTERN APT SUPPLY & MAINT CO
           MAUI OCEANFRONT INN

Residence or business address: 1335 Hotel Cir S # 107
           San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 03/10 | | 7,184.78 |
| | General Excise | GE-01 | 04/10 | | 6,200.96 |
| | Transient Accommodations | TA-01 | 03/10 | | 14,004.90 |
| | Transient Accommodations | TA-01 | 04/10 | | 10,244.84 |
| | | | | Total: | $37,635.48 |

Dated: WAILUKU, Hawaii
   July 30, 2010

Director of Taxation of the State of Hawaii

COUNTY OF MAUI      } SS

STATE OF HAWAII      }

By: _____
  S. Hondo, Delinquent Tax Collection Assistant

On this 30th day of July, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated July 30, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

DENISE CORDEIRO
NOTARY
PUBLIC
No. 89-568
STATE OF HAWAII





R-679    **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
OCT 18, 2010    08:02 AM

Doc No(s) 2010-157287



/s/ NICKI ANN THOMPSON
REGISTRAR

20    18/18   Z1

After Recordation Return By: Mail ☐   Pickup ☒   To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION
# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below. By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):    WESTERN APT SUPPLY & MAINT CO
MAUI OCEANFRONT INN

Residence or business address:    1335 Hotel Cir S # 107
San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 05/10 | | 6,610.77 |
| | General Excise | GE-01 | 07/10 | | 5,403.17 |
| | Transient Accommodations | TA-01 | 05/10 | | 11,955.75 |
| | Transient Accommodations | TA-01 | 07/10 | | 13,255.27 |
| | | | | **Total:** | **$37,224.96** |

Dated: WAILUKU, Hawaii
September 28, 2010

Director of Taxation of the State of Hawaii

COUNTY OF MAUI    } SS
STATE OF HAWAII    }

By: _____
S. Hondo, Delinquent Tax Collection Assistant

On this 28th day of September, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1 page Certificate of State Tax Lien, dated September 28, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

*(Notary seal: DENISE CORDEIRO, NOTARY PUBLIC, No. 89-568, STATE OF HAWAII)*





R-808  **STATE OF HAWAII**
**BUREAU OF CONVEYANCES**
**RECORDED**
NOV 23, 2010     08:02 AM

Doc No(s) 2010-181451



/s/ NICKI ANN THOMPSON
REGISTRAR

20    23/23  Z12

---

After Recordation Return By: Mail ☐  Pickup ☒  To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

---

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION
# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below.  By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):     WESTERN APT SUPPLY & MAINT CO
MAUI OCEANFRONT INN
Residence or business address:   1335 Hotel Cir S # 107
San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 08/10 | | 6,363.74 |
| | Transient Accommodations | TA-01 | 08/10 | | 12,257.32 |
| | | | | **Total:** | **$18,621.06** |

Dated: WAILUKU, Hawaii
November 9, 2010

Director of Taxation of the State of Hawaii

By: _____
S. Hondo, Delinquent Tax Collection Assistant

COUNTY OF MAUI            } SS
STATE OF HAWAII            }

On this 9th day of November, 2010 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated November 9, 2010, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

DENISE CORDEIRO
NOTARY
PUBLIC
No. 89-568
STATE OF HAWAII







/s/ NICKI ANN THOMPSON
REGISTRAR

20      26/27  Z2

---

After Recordation Return By:  Mail ☐  Pickup ☒  To:

DEPARTMENT OF TAXATION
Compliance Division - Collection Branch
P.O. Box 259
Honolulu, HI 96809

STATE OF HAWAII
Department of Taxation
Compliance Division

---

Form D-15 (Rev. 2009)

STATE OF HAWAII – DEPARTMENT OF TAXATION

# CERTIFICATE OF STATE TAX LIEN

Pursuant to the provisions of Sec 231-33, Hawaii Revised Statutes, it is hereby certified that the following named taxpayer(s) (is) (are) indebted to the State for the taxes shown below.  By virtue of said statute, said taxes (including penalties, interest, and costs) constitute liens in favor of the State upon all property and rights to property belonging to said taxpayer(s):

Name(s) of Taxpayer(s):        WESTERN APT SUPPLY & MAINT CO
                               MAUI OCEANFRONT INN
Residence or business address: 1335 Hotel Cir S # 107
                               San Diego CA 92108-3408

| Case Number | Tax Type | Account Suffix | Period | Reference Number | Tax |
|---|---|---|---|---|---|
| 215713 | General Excise | GE-01 | 09/10 | | 8,124.17 |
| | General Excise | GE-01 | 10/10 | | 9,216.60 |
| | General Excise | GE-01 | 11/10 | | 7,628.17 |
| | Transient Accommodations | TA-01 | 09/10 | | 18,807.05 |
| | | | | **Total:** | **$43,775.99** |

Dated:  WAILUKU, Hawaii
         February 23, 2011

Director of Taxation of the State of Hawaii

COUNTY OF MAUI                    } SS    By: _____
STATE OF HAWAII                   }            S. Hondo, Delinquent Tax Collection Assistant

On this 23rd day of February, 2011 before me, Denise Cordeiro, appeared S. Hondo, to me personally known, being by me duly sworn, in the Second Circuit of the State of Hawaii, did say that he/she is a DTCA for the STATE OF HAWAII; and that this 1-page Certificate of State Tax Lien, dated February 23, 2011, was signed on behalf of the STATE OF HAWAII; and that S. Hondo acknowledges that he/she executed said instrument as such DTCA as the free act and deed of the STATE OF HAWAII.

_____
Denise Cordeiro
Notary Public, Second Judicial Circuit, State of Hawaii
My Commission Expires: 10/17/2013

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
J. Lesinski  (727) 777-4000 ext 275

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
1013022674A OWBFA HI Bureau Of Conveyances

R-926            STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
AUG 24, 2010        01:00 PM

Doc No(s) 2010-123201

/s/ NICKI ANN THOMPSON
REGISTRAR

20    1/1    Z12

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # Bk:  Pg:  Instr#: 2007-031155 Date: 02/20/2007 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor  or  ☐ Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME OneWest Bank, FSB | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS 888 E. WALNUT STREET | CITY PASADENA | STATE CA | POSTAL CODE 91101 | COUNTRY USA |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any          ☒ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted  or  ☐ added,  or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Loan #: 1013022674A NTCID: 11757860 Entered By: CPE State: HI County: Bureau Of Conveyances

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

Bk: Pg: Instr#: 2007-031155 Date: 02/20/2007

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| | 12a. ORGANIZATION'S NAME | | |
|----|----|----|----|
| | FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | |
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT ADDENDUM (FORM UCC3Ad) (REV. 07/29/98)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
LA JOLLA BANK, FSB
390 WEST VALLEY PARKWAY
ESCONDIDO, CA  92025
```

*15 RS*

*TG: 2006658 76-S*

*PAGES: 4*

R-713     STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
FEB 20, 2007     10:00 AM

Doc No(s) 2007-031158

/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

20     15/18   Z9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| **1a. ORGANIZATION'S NAME** | |
| WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1335 HOTEL CIRCLE S. | SAN DIEGO | CA | 92108 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | CA | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| **2a. ORGANIZATION'S NAME** | |
| | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| **3a. ORGANIZATION'S NAME** | |
| LA JOLLA BANK, FSB | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 390 WEST VALLEY PARKWAY | ESCONDIDO | CA | 92025 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL OF THE FOLLOWING, TO THE EXTENT LOCATED ON, USED IN CONNECTION WITH OR RELATED TO THE REAL PROPERTY DESCRIBED BELOW: INVENTORY, ACCOUNTS, FIXTURES, EQUIPMENT, PLAN, PERMITS, BOOKS, RECORDS, CONTRACT RIGHTS, DEPOSITS, PREPAID RENTS, INSTRUMENTS, LETTERS OF CREDIT, CLAIMS, CAUSES OF ACTION, LAWSUITS, JUDGEMENTS, AWARDS, GENERAL INTANGIBLES, AND LOAN PROCEEDS; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate:  SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

ACKNOWLEDGEMENT COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

OR 9a. ORGANIZATION'S NAME
**WESTERN APARTMENT SUPPLY & MAINTENANCE CO.**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

OR 11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | | | |

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

OR 12a. ORGANIZATION'S NAME

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.

**14.** Description of real estate:

**15.** Additional collateral description:

**16.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

02/15/07  THU 12:23  [TX/RX NO 9627]

U.S. Bankruptcy Court - Hawaii  #11-00941  Dkt # 2  Filed  04/05/11  Page 88 of 93

TMK: (2) 3-9-004-029

## EXHIBIT "A"

UNRECORDED GENERAL LEASE NO. S-4212

LESSOR : STATE OF HAWAII, by its Board of land and Natural
Resources

LESSEE : WALTER C. WITTE and JOHN J. FAGAN

DATED : September 4, 1968
FILED : State of Hawaii, Department of Land and Natural
Resources
TERM : 65 years commencing dated hereof, up to and
including September 3, 2033


THE LESSEE'S INTEREST BY MESNE ASSIGNMENTS ASSIGNED

ASSIGNOR : TOWA SHINYO MAUI, INC., a Hawaii corporation

ASSIGNEE : WESTERN APARTMENT SUPPLY & MAINTENANCE CO., a
California corporation

DATED : February 29, 2000
RECORDED : Document No. 2000-082846
CONSENT : Given by the STATE OF HAWAII, by and through its
Board of Land and Natural Resources, by instrument
recorded as Document No. 2000-082847


Said Lease demising the following described premises:


All of that certain parcel of land (being portion(s) of the land(s)
described in and covered by government land of Kamaole situate on the
west side of Piilani Highway adjoining Land Patent Grant Number 13,225
to Yasuko N. Watanabe and Royal Patent Grant Number 1959 to Mahi)
situate, lying and being at Kamaole, Wailuku, Kula, Island and County
of Maui, State of Hawaii, and thus bounded and described:

Beginning at the southeast corner of this parcel of land, at the northeast corner of Grant 13225 to Yasuko N. Watanabe and on the west side of Piilani Highway, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU O KALI" being 9,644.91 feet south and 20,033.00 feet west, as shown on Government Survey Registered Map 3005 and running by azimuths measured clockwise from true South:

| 1. | 84° | 30' | | 356.83 | feet along Grant 13225 to Yasuko H. Watanabe and Grant 1959 to Mahi; |
|---|---|---|---|---|---|
| 2. | 171° | 30' | | 132.00 | feet along Government Beach Reserve; |
| 3. | 264° | 30' | | 383.09 | feet along Government Beach Reserve; |
| 4. | 3° | 07' | | 84.52 | feet along the west side of Piilani Highway; |

5.  Thence along the west side of Piilani Highway, on a curve to the left having a radius of 1,939.86 feet, the chord azimuth and distance being:

| | 2° | 23' | 50" | 48.71 | feet to the point of beginning and containing an area of 1.119 acres, more or less. |
|---|---|---|---|---|---|



# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
J. Lesinski  (727) 777-4000 ext 275

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
1073800076A OWBFA HI Bureau Of Conveyances



R-921          STATE OF HAWAII
          BUREAU OF CONVEYANCES
          RECORDED
AUG 24, 2010          01:00 PM

Doc No(s) 2010-123196



/s/ NICKI ANN THOMPSON
REGISTRAR

20      1/1      Z12

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| **1a. INITIAL FINANCING STATEMENT FILE #** | **1b.** This FINANCING STATEMENT AMENDMENT is |
|---|---|
| Bk:  Pg:  Instr#: 2007-031158 Date: 02/20/2007 | ☐ to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable). |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | **6a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| OR | WESTERN APARTMENT SUPPLY & MAINTENANCE CO. | | | |
| | **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | **7a. ORGANIZATION'S NAME** | | | | |
|---|---|---|---|---|---|
| OR | OneWest Bank, FSB | | | | |
| | **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | | SUFFIX |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 888 E. WALNUT STREET | PASADENA | CA | 91101 | USA |

| **7d. SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID #, if any** | |
|---|---|---|---|---|---|
| | | | | | ☒ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | **9a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| OR | FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | | |
| | **9b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**

Loan #: 1073800076A NTCID: 11757865 Entered By: CPE State: HI County: Bureau Of Conveyances

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

Bk: Pg: Instr#: 2007-031158 Date: 02/20/2007

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| | 12a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, La Jolla, CA fka La Jolla Bank, FSB | | |
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

# Maui Oceanfront Days Inn
## APRIL, MAY, JUNE OPERATING BUDGET

| CATEGORY | Apr 2011 | May 2011 | Jun 2011 | Total |
|---|---|---|---|---|
| **Income Summary** | | | | |
| **STATS** | | | | |
| Rooms Available | 2,610 | 2,697 | 2,610 | 7,917 |
| Rooms Sold | 2,100 | 2,108 | 2,010 | 6,218 |
| ADR | 107.20 | 104.39 | 102.96 | 104.88 |
| Occupancy % | 80.46% | 78.16% | 77.01% | 78.54% |
| RevPar | 86.25 | 81.59 | 79.29 | 82.37 |
| **REVENUE** | | | | |
| Room Revenues | 225,120 | 220,054 | 206,955 | 652,129 |
| Telecomm Revenues | 0 | 0 | 0 | 0 |
| Other Revenues | 54,603 | 53,932 | 52,197 | 160,732 |
| **Total Revenues** | 279,723 | 273,986 | 259,152 | 812,861 |
| **Departmental Expenses** | | | | |
| Room Expenses | 47,410 | 49,196 | 47,498 | 144,105 |
| Telecomm Expenses | 800 | 800 | 800 | 2,400 |
| Other Expenses | 0 | 0 | 0 | 0 |
| **Total Departmental Expenses** | 48,210 | 49,996 | 48,298 | 146,505 |
| **Total Departmental Income** | 231,513 | 223,990 | 210,853 | 666,356 |
| **Undistributed Operating Expenses** | | | | |
| Admin & General Expenses | 17,067 | 17,067 | 22,067 | 56,201 |
| Sales & Marketing Expenses | 1,200 | 1,200 | 1,200 | 3,600 |
| Repairs & Maint. Expenses | 7,293 | 6,893 | 8,493 | 22,678 |
| Utilities Expenses | 12,320 | 12,154 | 11,326 | 35,800 |
| Franchise Fee Expenses | 21,977 | 21,594 | 21,860 | 65,431 |
| **Total Undistributed expenses** | 59,857 | 58,908 | 64,946 | 183,710 |
| **Gross Operating Profit** | 171,656 | 165,082 | 145,908 | 482,646 |
| **Management Fees** | 4,500 | 4,500 | 4,500 | 13,500 |
| **Income before Fixed Charges** | 167,156 | 160,582 | 141,408 | 469,146 |
| Insurance | 7,457 | 7,457 | 7,457 | 22,371 |
| Property Taxes | 0 | 0 | 0 | 0 |
| Interest | 0 | 0 | 0 | 0 |
| Owners Expense | 0 | 0 | 0 | 0 |
| Equipment Lease | 300 | 0 | 0 | 300 |
| GET & TAT Payments | 29,828 | 29,157 | 27,422 | 86,407 |
| Land Lease | 127 | 127 | 127 | 381 |
| **Total Fixed** | 38,112 | 37,141 | 35,406 | 110,659 |
| **Net Operating Income** | 129,044 | 123,441 | 106,002 | 358,487 |
| **Debt Service** | 60,000 | 60,000 | 60,000 | 180,000 |
| **Net Income** | 69,044 | 63,441 | 46,002 | 178,487 |

4/5/2011 at 3:06:42 PM

Exhibit B